JUDGE ROBERTSON
delivered the opinion op the majority op the court :
The Louisville and Nashville railroad company having failed ever to list any of its corporate estate for taxation, this suit was, on the 15th April, 1865, brought against the corporation in the Franklin circuit court for coercing the amount of the tax assessable for the years 1856-7-8-9-60 -1-2-3; and, after a full and elaborate defense, the circuit court rendered a judgment in favor of the Commonwealth for $57,217 60 for all those years.
The grounds principally urged against the judgment are the following:
1. That the revenue law {art. 5, sec 1, chap. 83, 2 Stanton) subjecting the estate of “persons" not therein excepted, did not contemplate such an artificial person as this corporation; and that, under that law, the beneficial owners as stockholders were alone liable, and the company therefore was exempt.
*253 2. That the assessment, as made by the Auditor’s agent, and which was the only basis of the judgment, was illegal and void; and that, therefore, the Franklin circuit court had no jurisdiction to render the judgment.
3. That the action was barred for the years 1856-7-8-9 by the statute of limitations.
On full consideration, this court is of the opinion that neither of these grounds of resistance, except the second, is maintainable.
1. Persons being either natural or artificial, “person,” by legal interpretation, includes both classes; and a corporation being in this legal sense a person, the appellant is prima facie included in the word “ person” in the revenue law; and this construction is fortified by the consideration that there appears to be no reasonable cause for exempting from taxation the property of such á corporation which, if owned by a natural person, would be subject to that common and necessary burthen for the support by the Commonwealth of all such persons equally. The statute, with a few special exceptions, not including railroad companies, requires the property of all persons to be assessed for taxation; and it seems to us, therefore, that the appellant’s taxable estate is subjected to assessment by the statute. If it be not subject, we could see no reason for subjecting that of any other corporation; but it must be admitted, that, antecedently to the 3d of January, 1856, the property of most money-making corporations, like that of natural persons, was taxable. And the statute of that date does not, when properly considered, negative that assumption.
The second section of an act of February 28th, 1862, having provided for the assessment of the property of every person unassessed since the 10th of January, 1856, the first section of the statute of January 3d, 1864, *254 amended that section, so as expressly to include all incorporated companies deriving income from their property “ which, if owned by a private citizen, would be subject to taxation.” The object of this amendatory, and, as we think, declaratory enactment, was not to subject that which was previously exempt, but only to certify that which, though pre-existing, might have been doubted, and especially to require the Assistant Auditor to procure the assessment of the property of incorporations and joint stock companies which had not been, but ought to have been, listed or assessed for years past. The section which it amended rather imported that it applied only to natural persons; but both sections clearly imply that the property which he was required to inquire after and proceed against had been subject to taxation, but had not been actually assessed. “ The powers of the agent enlarged and extended,” is the title of this amendatory act; and these powers were confined to property liable to taxation, but which had not been assessed since the year 1856. The amendment, therefore, did not subject property before exempt, but only defined certain species which was not exempt, but respecting which there was some doubt, which may have been the cause of its non-assessment.
Consequently, the amendment itself proves that the Legislature considered railroads as always subject to taxation, but enacted the amendment to remove doubts arising from the language of the revenue law or from conflicting opinions as to whether the corporation or the stockholders should list for taxation. And this legislative purpose and understanding are made almost self-evident by the inevitable presumption that the specific exceptions in the revenue law exempted all persons and property intended to be exempt.
*255 Against this conclusion the first section of an act of 20th February, 1864, has been urged in argument. That section provides, that “ the several railroads, their depot grounds and improvements, with the right of way, engines, rolling stock, and other investments for the uses and purposes of the roads, are hereby assessed for taxation at the rate of twenty thousand dollars per mile.”
Several other sections of the same act make, in like manner, assessments of other species of property, or substitute specific for ad valorem, taxes, in many cases in which the same property was previously taxable. And the context clearly shows that the object was not to subject property before exempt, but only to assess, once for all, property, the ordinary and repeated assessments of which would be inconvenient and of uncertain results, or to fix a standard of specific instead of ad valorem taxation. The words “ hereby assessed,” in the first section, and some other sections, are alone sufficient to prove this. The act itself assessed what was before assessable in a more hazardous and doubtful mode. The eighth section imports that the taxes assessed or specified by the act were “ in lieu of other taxes;” and the ninth section provides, that “ nothing in this act shall be so construed as to exempt any of the property, the tax upon which is specifically provided for by the provisions of this act, from the payment of any taxes which may not have been paid heretofore, this act being intended to more particularly specify how the taxes shall be paid.”
This act, therefore, strongly implies that the appellant was never exempt from taxation in some form, and, either collectively as a corporation, or individually as stockholders. And, as the legal estate of the corporation is the beneficial property of the stockholders, the same property, whether in its legal or equitable form, should not *256 be taxed twice; but the taxation of the corporation should exonerate the stockholders, and vice versa. And, looking at this phase of the case, it would not only be more convenient and available, but more befitting, to tax, the single corporation than its multitudinous beneficiaries. What has been the practical construction of -the law in this respect we do not know; but if stockholders have ever paid equalization taxes on their stock, the corporation would be entitled to credit pro tanto.
The fourth section of the said act of 20th February, 1864, provides, that, after that enactment, the stock in the assessed corporations shall be exempt from taxation in the hands of the stockholders. To make it certain who should be assessed in. such cases, and to prevent more than one assessment, may have been one of the objects of the act.
Our conclusion is that the appellant was subject to taxation, according to the value of its corporate estate, ever since it owned such estate, until the specific tax was substituted. And, while air ordinary right of way over another’s land is both incorporeal and personal, and scarcely appreciable by any fixed standard, and therefore may not be a fit subject of taxation, nevertheless the road of the appellants, with its substructure and fixtures, is not only corporeal and appreciable as property, but is a hereditament incident to the land over which it runs; and, as such an interest in land, it is subject to tax under our revenue law, and was properly so held in this case.
For the foregoing reasons the first ground of defense is adjudged untenable.
But the second ground is more solid and defensible.
The 20th section of ai'ticle 6, chapter 83 (Stan. Dig., pp. 255-6), provides that if any person, when legally called on, shall fail or refuse to give in a true list of his taxable *257 property, “he shall be a delinquent, and fined not exceeding one hundred dollars, and subjected to the payment of three times the amount of the tax on his estate.”
And the 22d section, lb., gives to the county courts jurisdiction to enforce the penalty and fix the value of the taxable estate.
The first section of an act of February 28th-, 1862, (Myers’ Suppt., p. 4), authorized the Auditor to appoint an agent, and the second section provides, “that where any person owning property in this Commonwealth has failed, since January 10th, 1856, to list his property, as now provided by law, it shall be the duty of the agent of the Auditor to give information of such persons, and their failure to list their property to the county court of the county in which said property should have been listed, and said court shall issue a summons against such person or persons, requiring them to appear before such court in thirty days after the service of such summons, and list their property for taxation for the years they have heretofore failed to do so ; and said court shall, upon being satisfied that such person or persons have failed to list their property and have not paid the taxes thereon to the sheriff, assess and fix the value of the same for the years such property was not assessed, and the same shall be certified by the said court in the same manner as is now required by law, to the proper officers for the collection thereof.”
The first section of an act of February 20th, 1864 (Ib., p. 11), for facilitating the agent’s investigations, authorizes him to inspect the books of corporations, and in cases of refusal to permit such inspection, the second section, ibid, makes it the agent’s duty to report to the Auditor that fact, and also an assessment by himself of such recusant’s taxable property, and requires the *258 Auditor thereupon to proceed in the circuit court of Franklin to enforce payment; and the third section, ibid, provides, “ that all proceedings in the name of the Commonwealth against corporations, public and private, for demands due to the State, set on foot by the agent of the Auditor, shall be commenced and determined in the. Franklin circuit court.”
These are the only enactments essentially bearing on the question we are now considering, and altogether they show the prudent purpose of the Legislature to provide the best practicable means of securing a just assessment of all taxable property, and to enable, by some sort of express notice, every delinquent owner to list or to assist in the assessment of such property before he should be subjected to penalty or suit. It would have been improvident and unreasonable, especially in the case of such a corporation as the appellant, to make an owner, never refusing on legal notice to comply with the law, liable to an action before assessment, or to an ex parte and haphazard assessment without his aid or knowledge; and this seems to have been the legislative sentiment and policy in all its enactments in pari materia on this subject. The procedure in such cases is arbitrary and altogether statutory; and we can find no statutory authority for an action for taxes before assessment or for compelling an assessment, but for an action only to recover some denounced penalty, or the amount of a tax already assessed in a mode prescribed by law.
The petition in this case was for only obtaining an assessment and enforcing a supposed lien to secure payment. We cannot recognize the jurisdiction of the Franklin circuit court, either to assess or to render judgment before such an assessment, as prescribed in the statutes hereinbefore cited.
*259 Had the Auditor’s agent reported to the county court a failure to list for taxation, and that court had thereupon made an assessment in the mode prescribed, or had he' been refused access to the books of the corporation, and had then, as he might lawfully have done, made an assessment, the State would have had a legal and ascertained demand against the appellant, which she might have enforced by action in the Franklin circuit court, under the special authority of the third section of the act of the 20th of February, as already quoted. Before an assessment ascertaining the amount of unpaid taxes the taxable owner could not pay nor the Auditor receive any certain amount, and the owner’s delinquency would be, not in failing to pay, but only in not listing for taxation; and for such default the only remedy authorized by law is to procure an assessment by the Assistant Auditor or the county court, and to impose a fine for persistent recusancy.
There can be no legal assessment in any other mode than such as is expressly provided for that purpose by statute. A suit for assessment in the Franklin circuit court is not so prescribed for such purpose. The said third section cannot be consistently so interpreted as to authorize that court to assess or to give judgment for taxes not otherwise ascertained by an assessment before the commencement of the action. The second section of the same act having made it the Auditor’s duty to sue in the Franklin circuit court for the amount assessed and filed in his office by the Assistant Auditor, after any corporation shall have refused the examination of its books provided for by the first section, the third section merely extends the like remedy to all other like cases of “ demands due ” by corporations to the State. But when- this action was brought, there having been no assessment in any mode, there was no actionable demand due to the State by the *260 appellant; and, consequently, there was no cause of action or other procedure in the Franklin circuit court. To construe the third section as intending to authorize such a suit as this to assess unassessed property, and then adjudge the payment of the amount to be so assessed, would supersede the provisions for assessments by the Assistant Auditor or county courts, as prescribed (even that in the second section), and subject every corporation in any part of Kentucky to liability to being sued in Frankfort and drawn to the Capital before its taxable property had been assessed, or the appointed assessor had tided to assess it. Then, moreover, a corporation would be liable to such absurd and oppressive results without any reason, and without doing anything from which a canse of action could arise; and, too, the limitation to the action would commence running when there was no cause of action. But the Attorney General, while he insists that the limitation does not apply to this case, because there was no cause of action until an assessment, yet urges the maintainability of this suit for making an assessment and enforcing payment. A construction of the said third section so inconvenient, latitudinary, and inconsistent, cannot be judicial^ recognized.
The petition in this case not only, as before stated, proceeds for making an assessment which had not been previously made in any way, but fails in all respects to allege any one of the facts indispensable for the maintenance of the action for taxes unassessed. The only legal and logical deduction from such a blank petition is, that there is no cause of action.
The petition presents no foundation for any judgment against the defendant to the action, and the law itself demurred to it. An admission of all the allegations would not have conceded a cause of action; and the petition apparently showing, as it does, that there was *261 neither cause of action nor jurisdiction in the circuit court, litigation on the irrelevant question of liability to taxation neither made the petition sufficient, nor could authorize the judgment rendered upon it against the appellant.
We are therefore of the opinion that, on the only facts alleged in' the petition, and for the purpose sought by it, the judgment was not authorized, and should be reversed for apparent want of a matured cause of action, and consequent want of jurisdiction.
' But as the only statutory remedies for procuring assessment and enforcing payment of taxes claimed in this case will not be affected by the abortion of this premature action, and may be hereafter resorted to, this court, to avoid future trouble on the question of limitation, will now dispose of it.
Had the course pursued been such as to have authorized this action, no portion of the entire claim against the appellant would have been barred by time. Although tie liability of the appellant is an implied promise, an action on which is barred by five years after the cause of action accrued, and although, also, the 9th section of article 3, chapter 63 (Stan. Rev. Stat., 131), applies the same limitation to such actions in the name of the Commonwealth, yet as there could have been no such implied promke by the appellant before a legal assessment, and as the 2d section of the 28th of February, 1862, supra, evidently neither contemplates nor constructively allows any limitation to the assessments for which it retrospectively provides, the limitation, therefore, never commenced running in this case.
Wherefore, because this action was premature, and the circuit court apparently had no jurisdiction, the judgment is reversed, and the cause remanded, with leave to amend or dismiss, as the appellee may elect.