## CHARLES MCNAMARA *vs.* JOHN PENGILLY.

58   353
:s64   544

Argued April 27, 1894.   Reversed July 23, 1894.

No. 8385.

**A vendor usually has a reasonable time after demand in which to convey.**

Where a vendor has received the purchase money on a contract for the sale and conveyance of real property, no time within which a conveyance shall be made being specified in the contract, he is entitled to reasonable time in which to execute and deliver the deed; and ordinarily, in such cases, there should be a demand for the deed, and, a refusal to deliver it before suit is brought to recover the purchase money.

**A vendors neglect to convey may amount to repudiation.**

In some instances, under such contracts, the neglect of the vendor to deliver a deed within a reasonable time may amount to, or be at least evidence of, an intention to repudiate the contract.

**Necessity of a demand erroneously ignored.**

*Held*, in the case at bar, that it was error for the court below to take from the jury all consideration of the question of the necessity of plaintiff's demanding a deed before bringing an action to recover the amount paid as the purchase price of the land contracted for.

Appeal by defendant, John Pengilly, from an order of the District Court of St. Louis County, *C. L. Brown*, J., made June 12, 1893, denying his motion for a new trial.

The defendant and two associates contemplated laying out and platting a townsite on the southeast quarter of the southwest quarter of section ten (10), T. 62, R. 14, in St. Louis County midway between Tower and Ely. The plaintiff, Charles McNamara, agreed with defendant to purchase an eighth interest in this forty acres and on February 26, 1890, sent defendant his check for $1,000, the purchase price, by letter written at Tower and directed to the defendant at Ely, in which he said, "You can consider this a loan until such time as you can send me a proper deed for an undivided eighth interest in the townsite." On March 3, 1890, defendant replied by letter stating he had received the plaintiff's letter and check and saying, "I will send you your deed in a day or so." Plaintiff commenced this action January 5, 1893, to recover the $1,000 and in-

terest. The remaining facts are stated in the opinion. Plaintiff obtained a verdict. Defendant moved for a new trial. Being denied he appeals.

*Draper, Davis & Hollister,* for appellant.

*Wm. B. Phelps,* for respondent.

COLLINS, J.    Prior to February 26, 1890, plaintiff and defendant entered into an agreement—verbally, it would seem—whereby the former was to purchase of the latter an eighth interest in a certain forty acres of land.    At this time plaintiff knew that the land had not been patented by the general government, and that it was expected that the patent would soon be issued to one Olson, who was under obligation, as soon as the patent came, to deed to defendant, or, possibly, to some other person from whom he would obtain title. On the day last named plaintiff wrote to defendant, inclosing his check for $1,000,—the amount agreed upon as the purchase price,— saying, "You can consider this as a loan until such time as you can send me a proper deed for an undivided one-eighth interest in the" land, describing it.    Four days later defendant acknowledged the receipt of this letter, with the inclosure, and said, "I will send you a deed in a day or so."    It appears that when purchasing plaintiff knew that there were three persons besides defendant then interested in the purchase from Olson, each to have a one-fourth interest.    He was also informed as early as August 29, 1890, that it was understood that Olson was to deed to one of these persons,—O. D. Kinney, —and that the latter was then to convey to each of the other persons according to their respective interests.    The patent to Olson bore date December 13, 1890, and was received by him January 8, 1891.    He conveyed to Kinney October 19th following.    It was shown that on several occasions between the day plaintiff paid the full purchase price for the land and the 1st of October, 1891, he had inquired of defendant and of Kinney for the deed, although he had never made a demand for it, nor had he demanded a return of the money, nor had he expressly repudiated his agreement to take the land.    On October 21, 1891, plaintiff brought an action to recover from defendant the amount paid as the purchase price with interest, but for some reason, not apparent from the record, the action was dismissed by the court on trial.    After the action was commenced,

and on October 28th, Kinney, at defendants' request, executed a deed in which plaintiff was named as grantee of an undivided one-eighth interest in the forty, and sent it by mail to plaintiff, who received it November 4th. He refused to accept it, and it was returned in due season. After the first action was dismissed, the present one was commenced, and upon a trial plaintiff obtained a verdict. Defendant appeals from an order refusing a new trial.

Upon the trial in the court below it was the contention of plaintiff's counsel that under the agreement between the parties it was incumbent upon defendant to procure title to himself from Olson, and to ·convey, or to offer to convey, to plaintiff an undivided one-eighth interest in the forty acres, within a reasonable time after the patent had been issued and delivered to Olson; and further that, in case he failed to do so, no demand upon him was necessary in order to put him in default, and to make him subject to an action for the recovery of the amount paid. It was the theory and position of counsel for defendant, as stated in his brief, that the money received from plaintiff was to be regarded as a loan until such time as he could send plaintiff a deed executed by himself or by Kinney; that he caused Kinney to execute and deliver the deed as soon as he could, and that the delay which occurred was acquiesced in and waived by plaintiff.

The court first charged (correctly) that if the jury found the agreement to have been that the deed was to come from defendant himself, not from Kinney, the plaintiff was entitled to a verdict, because he was not obliged to accept a deed executed by any other person. It further charged, in substance, that if the agreement was that Kinney was to execute the deed, it was defendant's duty to cause the same to be executed and delivered within a reasonable time after the issuance of the patent. What was a reasonable time was to be determined from all the facts and circumstances in evidence. No exceptions were taken by defendant to these instructions, but along the line on which he tried the case his counsel requested the court to charge—First, that if the jury found the agreement to have been that defendant was to procure Kinney to make the deed as soon as he could, and that it was procured as soon as defendant could get it, and promptly forwarded to plaintiff, the latter could not recover; second, that if it was found that defendant was to obtain title to the land in

himself, and then convey to plaintiff, or to procure Kinney to deed to the latter after Kinney had acquired the title, and such a deed had been tendered before the commencement of this action, then the plaintiff could not recover.　Both of these requests were refused, and exceptions noted.　There was evidence which would have warranted the jury in finding that the original agreement was that Kinney should obtain title from Olson after patent had been issued, and should then convey directly to plaintiff and to the other parties according to their respective interests.　It was also shown that on several occasions plaintiff interrogated Kinney as to a deed, and when he would receive one from him, and that about the 1st of September, 1890, in response to an inquiry, he received from Kinney a writing in which the latter stated that he held the contract with Olson for a conveyance of the land, and that, as soon as the patent was issued, and Olson deeded to him, he would convey to plaintiff the one-eighth interest purchased from defendant.　If he had not, before this, full knowledge that his deed was to come from Kinney, and not from defendant, he then had reason to believe so.　It was also shown that, after this, plaintiff to some extent treated the contract as in force, although it was not shown that he—or the defendant, for that matter—was advised of the issuance of the patent until about the time of the commencement of the first action.　Both parties seem to have treated the contract as a subsisting one, and from what occurred it might well be found the plaintiff indicated a willingness to accept a deed, notwithstanding the delay, and no matter what caused it, up to the time he brought the suit just referred to.　Evidently he did not manifest the slightest intention to rescind until then.　Although he frequently spoke to Kinney and to defendant about the deed, it was not in the nature of a formal demand, or as indicating that, if not forthcoming, he should elect to rescind, and recover back his purchase money, but rather as indicating his intention to abide by the contract, and an anxiety to take the conveyance, notwithstanding the delay.

Now, time was not made of the essence of this contract in terms. In fact that plaintiff vendee anticipated, if he did not invite, delay, is evidenced by his letter transmitting the purchase money to defendant vendor, in which he remarked that the latter might consider the money a loan until such time as he could send a deed.　Nor was

time made of the essence of the contract, without a special agreement, by the nature or value of the property, or the situation of the parties, for no change was shown in either. Where there is no stipulation that time shall be essential, nor anything in the nature or circumstances of the agreement to make it so, it may nevertheless be made of the essence by the proper action of the party who is not in default. Notice to a vendor to perform or to a vendee to pay can be given, and, if not complied with within a reasonable time, the contract may be treated by the vendor as abandoned, or by the vendee as rescinded. But it is not within the power of a party to a contract of this kind, who has acquiesced in or consented to delay in the performance, to deprive the other of all opportunity to perform without notice. A vendor of land cannot be permitted to tacitly consent to postponement of payments by the vendee, and then, without a word of warning, deprive the latter of his opportunity to pay. Nor can a vendee be allowed to acquiesce in and encourage delay in the delivery of a deed by the vendor, and then to summarily take away all opportunity to deliver it. Such is not the rule, even where time is specifically made, or may become, of the essence of the contract. If it were, the rankest cupidity and bad faith would be promoted between vendors and vendees. And the effect of treating land contracts in force after default has been considered in several cases in this court. *Cummings* v. *Rogers,* 36 Minn. 317, (30 N. W. 892,) and cases cited. But, putting aside all questions of waiver by acquiescence and consent to delay in performance which might control the case, the rule seems to be, and we regard it as just, that where a vendor has received the purchase money for land which he has agreed to convey, no time being specified, he is entitled to a reasonable time within which to make the conveyance, and in such case there should be a demand for a deed, and a refusal to deliver it, before a suit for the purchase money. *Kime* v. *Kime,* 41 Ill. 397; *Walters* v. *Miller,* 10 Iowa, 427. As bearing upon the subject generally, see *Higby* v. *Whittaker,* 8 Ohio, 198; *Tiernan* v. *Roland,* 15 Pa. St. 441; Leake, Cont. 851.

Of course, the neglect of either party to perform the conditions of the agreement at or within the time or times stipulated, or, when no time is specified, within a reasonable time, may in some instances amount to, or at least be evidence of, an intention to repu-

diate or abandon.   It is not, however, a mere slight or partial neg-
lect or omission of one of the contracting parties to perform as he
has obligated himself which will justify the other in repudiating
the contract or suing for a rescission.   As a rule, the failure must
be a total one; there must be an absolute refusal, or evidence of in-
ability, unless time has been made an essential element, so that the
object of the contract shall have been defeated or rendered unattain-
able by reason of the misconduct or default.   2 Warv. Vend. 850,
and cases cited.

By reference to the charge of the court heretofore mentioned it
will be seen that these rules were not regarded as governing the case.
The court charged that if Kinney was to execute the deed it was
incumbent upon defendant to cause the same to be executed and de-
livered within a reasonable time after the issuance of the patent;
what was a reasonable time to be determined from all facts and cir-
cumstances.   The effect of plaintiff's conduct and acts with defend-
ant and with Kinney, which it might have found amounted to ac-
quiescence in the delay and a waiver of it, were wholly taken away
from the jury by means of this instruction.   Yet, as before stated,
no exception was taken by counsel for defendant.   But the court re-
fused to instruct, an exception being reserved, as asked in defend-
ant's second request, the substance of which has been stated.   Im-
mediately after the bringing of the first action, which may be re-
garded as a demand for a deed, one was executed by Kinney, sent
to, and received by plaintiff.   If the deed was to come from Kinney,
and there was no sufficient evidence of an intention on defendant's
part to repudiate the contract, to a refusal to perform a demand was
necessary before suing him for rescission.   By refusing to give de-
fendant's second request all question of the necessity of demand un-
der any circumstances was also taken from the jury.

We have stated that on the evidence a finding could have been
made that the conveyance was to be direct from Kinney to plaintiff.
It is also plain that the jury would have been warranted in finding
that plaintiff's acts and conduct amounted to a waiver of the de-
fault; and it is equally true that, except the bare fact that defendant
did not exert himself to learn when the patent was issued, and then
to see that Olson promptly conveyed to Kinney, and that the latter at
once conveyed to plaintiff, or to himself, so that he could comply with

the agreement, there was nothing to indicate an intention on his part
to repudiate or to refuse to perform.

Order reversed.

BUCK, J., did not sit.

(Opinion published 59 N. W. 1055.)