(No. 15716.—Decree affirmed.)

FRED PARK *et al.* Appellees, *vs.* JOHN W. KOOPMANN, Appellant.

*Opinion filed February 19, 1924—Rehearing denied April 3, 1924.*

1. SPECIFIC PERFORMANCE—*when defendant waives right to delivery of abstract at certain time.* Although time is stated to be of the essence of a contract for sale of land, the purchaser waives whatever right he may have to insist upon delivery of the abstract to him on a certain day specified in the contract where he declined to accept the abstract for examination when it was tendered, both before and after said date, and thereafter went into possession and otherwise showed his recognition of the contract and acceptance of benefits under it.

2. SAME—*when specific performance will be granted as a matter of right.* Courts of equity will uphold contracts for the sale of real estate and enforce their performance when they are entered into fairly and with complete understanding on both sides, and under such circumstances the party who is seeking specific performance, having performed his part of the contract, will be granted such relief not as a favor but as a matter of right.

APPEAL from the Circuit Court of Livingston county; the Hon. STEVENS R. BAKER, Judge, presiding.

ARTHUR A. LOWRY, for appellant.

F. A. ORTMAN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a specific performance case. Appellees filed their bill praying specific performance of a contract entered into between them and appellant for the sale of real estate, and on final hearing a decree was entered in accordance with the prayer of the bill.

The facts are, that on October 9, 1920, appellant and appellees entered into a contract for the purchase of eighty acres of land in Livingston county at the sale price of $36,000,—$2000 to be paid on March 1, 1921, when possession was to be taken by the purchaser, (which payment was evidenced by a promissory note for that amount executed and delivered on the date of the contract, without interest,) the balance of the purchase price to be paid on March 1, 1922, at which time a warranty deed was to be delivered to appellant. Deferred payments were to draw interest at the rate of six per cent from March 1, 1921, the taxes for 1921 and subsequent years to be assumed by appellant. The contract also provided that an abstract showing merchantable title should be furnished on or before the first of January, and by the language of the contract it was stated that it was to be brought down to February 1, 1922, and was to show the premises free and clear of all incumbrance except a certain mortgage of $6020, which the appellees were to pay and have released of record on or before March 1, 1922, the date of completion of the deal. On March 1, 1922, appellant called at the office of C. B. Horrie, who apparently was acting as agent for appellees, and contended that the abstract delivered was not a complete abstract showing merchantable title, as provided in the contract, and made a demand on Horrie for such an abstract and a deed, and not receiving the same at that time, declared that he would have nothing further to do with the matter and left. This bill followed.

The grounds on which appellant seeks to have the decree reversed are, that appellees failed to pay the 1919 and 1920 taxes on the premises, and that they failed to furnish an abstract of title on January 1, 1921, brought down to February 1, 1922, as provided in the contract. The first contention is utterly without merit, as the evidence shows the taxes for 1919 and 1920 were paid and appellant was by the contract to assume and pay the taxes of 1921. To appellant's second contention appellees reply that the language used in the contract requiring that an abstract be furnished by January 1, 1921, continued to February 1, 1922, is ambiguous and incapable of being complied with; that the appellant knew this, and that, moreover, he at no time insisted on a delivery of an abstract at that time but waived that requirement. They also contend that a complete abstract showing merchantable title was both before and after January 1, 1921, tendered to appellant but was declined by him, and that no abstract was, in fact, accepted for examination by him until January 30, 1922, and that he in other ways recognized the contract and thereby waived the requirement as to time.

The facts as we gather them from the abstract and additional abstract are, that a few days after the execution of the agreement, appellant, having business in the bank in which appellee Duis is cashier, was told by Duis that he had a complete abstract to the premises in the bank which showed good title, subject to the $6020 mortgage, and suggested that appellant take it and have it examined; that appellant replied he did not care to take the abstract but would call for it when he wanted it. Again, on February 28, 1921, appellant called at the bank and paid the $2000 due upon the note for part of the purchase price due on March 1, and Duis again requested him to take the abstract and have it examined, to which he replied that he would leave it at the bank until he got ready for it. Possession of the premises was turned over to appellant on March 1, 1921,

in accordance with the contract. The farm was at that time leased to a tenant by the name of Weichman, and appellant arranged with Weichman to continue in possession and operation of the farm for the year 1921. Weichman had previously been notified by appellees that the farm was sold and they would be unable to re-lease it to him for the year 1921 but that they would pay him for some fall plowing which they wanted done. They paid Weichman $85 for this plowing. Weichman, upon renting the land of appellant, turned this sum over to him. The record shows that when the crops were harvested appellant directed the delivery of the grain and collected the money therefor. During the year 1921 he engaged the services of C. B. Horrie, a real estate agent, for the purpose of selling the land, and attempted to sell it himself to various persons, including his tenant, Weichman. Weichman told him that he would not purchase the farm but that he would rent it for another year if appellant desired, and was told that appellant expected to farm the land himself for the year 1922 if he did not sell. In the fall of 1921 appellant had some of this land plowed for the following season. During the month of March, 1921, he arranged for a continuation of the mortgage loan of $6020, which was to fall due in May of that year, but which, as the record shows, was on March 1, 1922, paid by appellees. The record shows that on January 30, 1922, appellee Park called at the bank and took the abstract to the home of appellant and delivered it to him with the request that he examine it, so that if any objections were found they might be corrected, in order that the deal might be closed on March 1 of that year. Duis was out of the State at the time Park went to the bank to get the abstract. It consisted of three parts. Through oversight Park failed to deliver one of these three parts. Appellant had the abstract examined by his attorney but made no objection to it until March 1, 1922, the day when the deal was to be completed, when, as we have said, he called at the office of

Horrie and stated that he was willing to complete his part
of the contract but that the abstract was incomplete, and
for that reason he would have nothing further to do with
the transaction. Duis, upon being advised of appellant's
objections, immediately found the part that had not been
delivered, and, causing the abstract to be continued down
to March 1, 1922, showing release of the $6020 mortgage,
took the warranty deed by himself and Park and their
wives and with Horrie drove to the home of appellant on
the evening of March 1, the day for the completion of the
contract. He there made a tender of the warranty deed and
the complete abstract of title, stating that he did not know
the entire abstract had not been delivered, and also that
appellant might have reasonable time for examination of
the abstract if he saw fit to do so before making final pay-
ment. Appellant refused to accept the papers or have any-
thing further to do with the matter. He was afterwards
advised by letter that he might have more time for exami-
nation of the abstract and for making payment, but that
if he did not avail himself of that opportunity suit would
be brought against him. He did nothing further about it.

Appellant's objections as to the delivery of the abstract
are but little more than captious. It is undisputed in the
record that the abstract shows a merchantable title down
to March 1, 1922, the date for the completion of the con-
tract. Appellant waived whatever right he might have had
under the contract to have the abstract delivered to him on
January 1. He knew, as anybody else would know, that
an abstract could not be delivered on that date showing
merchantable title on any subsequent date. He declined to
take the abstract when tendered, until January 30, 1922,
when through inadvertence only a portion of it was given
him. He did not, however, raise any objection to this
until the day on which the contract was to be completed.
While time was made the essence of the contract, and the
date of the delivery of the abstract showing merchantable

title was therefore a right which appellant might have insisted upon, yet by declining to take the abstract when tendered to him before and after January 1, and by thereafter in divers ways showing his recognition of the contract and acceptance of benefits thereunder, he must be held to have waived that right, and that at the time he refused to carry out the contract he no longer had the right to insist upon time as of the essence thereof. The record shows that at no time did he object to the failure on the part of appellees to furnish an abstract on January 1, 1921. The abstract showing merchantable title was delivered to him on March 1 and an offer made to him of time to have it examined, if he desired. He had two parts of the abstract from January 30 without offering a suggestion as to its insufficiency. His silence for a month on a matter of that kind does not bear the earmarks of good faith. The contract was made in good faith. The title, as shown by the abstract delivered at the time he was called upon to complete the contract, was all that he had contracted for. There was no misunderstanding or misrepresentation whatever in the contract or the subject matter thereof. Courts of equity will uphold contracts for the sale of real estate and enforce their performance when they are entered into fairly and with complete understanding on both sides. Under such circumstances the party who is seeking specific performance, having performed his part of the contract, will be granted such relief, not as a favor but as a matter of right. (*Riemenschneider* v. *Tortoriello,* 287 Ill. 482.) The contract was entered into and performed by appellees in good faith and they are entitled to specific performance. The chancellor, therefore, did not err in decreeing the same.

The decree will be affirmed.                    *Decree affirmed.*